Case number 243275, John James et al. v. Norfolk Southern RR Co. et al., or arguments to be 15 minutes for plaintiffs and 15 minutes to be shared by defendants. Mr. Leiserman, you may proceed for the appellant. Ladies and gentlemen, I am E.J. Leiserman, arguing on behalf of Mr. Tiffany and Mr. James. Initially, this case is a whistleblower case, and I'm sure this court is well aware that there's four elements that have to be proved. They did it. They have to demonstrate clearly that they were clearly engaged in a protective activity. The Hours of Service Act, an accurate reporting of hours, is a protective activity. It clearly states so in the whistleblower statute, 49 U.S.C. 20109A7, to accurately report hours on duty pursuant to Chapter 211. 49211 is the Hours of Service Code, and if you look at 211, it has nine subparts, 01 through 09. 09 starts out, in order to improve safety and reduce fatigue, the Secretary may prescribe regulations. I say that because there's a suggestion in their briefing that this didn't involve safety. It involved nothing other than safety. Did you allege in the complaint that Norfolk Southern knew about this protected activity? Absolutely, and we gave evidence. What record evidence do you have that shows this knowledge? On one of the proposed amended complaints, we attached the declaratory statement of an Aaron Johnson, the union's local chairman, the highest ranking official at the yard, that he had talked to Mr. Moon before this incident ever happened. He had spoken to him about this two-minute setback. Mr. James testified that he had texted Moon before the hearing, telling him about the two-minute setback. They went forward anyways. They knew about the two-minute setback. Everybody knew about the two-minute setback. If everybody knows about the two-minute setback, here's what I don't understand. Your claim is that your clients were accurately reporting their time, but if everybody knows there's a glitch in the system, so there's a two-minute setback, then in order for Norfolk Southern to keep accurate records, don't you have to add two minutes? Yes, you do. But then in order to be accurate, so in other words, let's say I need to accurately report my weight, and I know that my scale is two pounds lighter than it really is. So if I'm going to keep an accurate log, I can't go home from the doctor and get on my scale and say, oh, I just lost two pounds. No, I have to add two in order to be accurate. So by not adding two, weren't your clients being inaccurate? No, if they added two, they reported it accurately. If they add two, they would not have been charged. But if they added two, it's now inaccurate reporting. No, no, it's actually accurate reporting because the report is going to be what Norfolk Southern is detailing. They have to keep accurate records. In order for them to keep accurate records, don't their employees have to add two? They don't. They do not keep accurate records. There is no two-minute setback when you come to work. Only when you check out. And if we had a chance to do discovery, I can tell this court with absolute certainty, about two days later before they have to deliver these documents to the FRA, they add the two minutes back. But one must ask, why do they have this two-minute setback? Yeah, why? That's a fair question. To defraud the Federal Railroad Administration. The Hours of Service Act essentially says you can only work 12 hours. Yeah, but your clients worked 3 hours and 40 minutes. I'm sorry? They worked 3 hours and 40 minutes, so there's already some time inflation going on here. Their jobs were done after 3 hours and 40 minutes, and then they stay on the clock for 6 hours so they can get paid for 8. Right. So we're already, there's a lot of time manipulation going on. Yes, and there's reason for that, and it's mischief, and it's not on behalf of the employee. It's mischief on behalf of this railroad, only this railroad, in an effort to deceive the Federal Railroad Administration. There's no reason to set that back for any other reason, but they do it. My clients aren't the only ones who insisted on reporting it accurately. For them to add 2 minutes on is to say, I worked 2 minutes more that I didn't work, so it'll get set back properly. Do you allege that they said that to Norfolk Southern? I'm sorry? Do you allege that these individuals, your plaintiffs, told Norfolk Southern that they would not add on any, that it was illegal for them to add on? I don't see that in the complaint, nor do I see an allegation that it was this activity that caused Norfolk Southern to terminate them, a refusal to add on. I don't see in the complaint that that's alleged as the reason for the termination. It would have been in the amended complaint. We corrected all the deficiency that Judge Carr noted, but he wouldn't let us file it. He said it was futile. We attempted again after the union filed their motion to dismiss, and Judge Carr denied that as well, and denied that, saying, I want to be accurate. He denied the second one as being futile and would not permit the amendment, and if I can read to this court what he said, what he said essentially demonstrates he never read it. His order says, I previously denied plaintiffs request to leave, for leave to amend the complaint because the proposed amendments would have been futile, since they would not have cured the deficiencies that caused me to dismiss their fraud claim against Norfolk Southern. The question before me on this motion is whether the additional factual allegations plaintiff proposed to add to a as yet undrafted, in bold letters, a yet undrafted complaint could be sufficient. That drafted complaint was attached to the motion. He never read it. I think your time is up. You'll have your rebuttal time. I'm sorry? I Your Honors, if it please the court, Joseph Devine with Baker Haas Settler. I represent Norfolk Southern on count three, which is the whistleblower retaliation. My co-counsel Dustin Dow represents them on the RLA matter. Instructing employees to sit around under pay for six hours before they go home, while getting paid for eight, is not a safety issue governed by the FRSA. Everybody agrees, okay, everybody agrees that management wanted to protect the assignment, the particular piece of work, the B55 job. And they wanted to protect that by making sure that the employees worked at least six hours on the record. So the boss says, hey, make sure you don't clock out until after six hours, so that you don't put this job, this piece of work, not just your personal job, but that piece of work at issue. So there is no dispute of fact that Norfolk Southern requires you to follow instructions of your supervisor. There's no dispute of fact that the supervisor, Mr. Moon, gave the instruction to work more than six hours. There's no dispute of fact that the records from the railroad show they worked less than that, and they got terminated as a result. As you indicated, there is simply no fact to support any refusal. The depositions, my counsel for the plaintiffs talks about complaint allegations. This is a summary judgment motion in front of Judge Carr, docket number 104. And that summary judgment motion is count three. His talking about the amended complaints and all of that, that's all related to the fraud counts and the RLA counts. In this case, there is no evidence, no genuine issue of material fact that these gentlemen worked six hours, slightly less than six hours. What's critically important here is the chapter 211 at 211.07, 49 U.S.C. 211.07, specifically says that this chapter concerns only the maximum number of hours, and that smaller numbers of hours are subject to collective bargaining. So this is not a safety concern, and the statute says so. So there was both no refusal, so in order to have an A2 claim, you have to have an act, you have to have a refusal, and that refusal has to be a refusal to violate a specific law, rule, or regulation related to safety. Here, there is none of that, because it was only six hours, and the statute says six hours is not a safety concern. Do you see a distinction between 2010-9, A7, and I think A2 is the first one? Yeah, A2 and A7, yes. Tell me why you think A7 fits within your argument one more time. Certainly. I see the argument better in the first one than I do in the second one. All right, so A7, there's no genuine issue of material fact that there's no A7 claim, because the statute says you have to have the act of accurate reporting pursuant to Chapter 211. When you open Chapter 211, it specifically says the maximum number of hours. So there's a 12-hour maximum in a day, there's a 270-plus in a month, there's rest that's required between that. So the shift limits otherwise are subject to the collective bargaining agreement, and they are, in fact, job protection. Yes. So all of this, this is not a safety issue under the FRSA. I see I am out of time, because I have split it with my co-counsel. If you have additional questions, happy to field them, but I don't want to step on their time. Fine, thank you.  Thank you, Your Honor. As a matter of police of court, Dustin Dow from Baker Hostetler. I am going to address the RLA fraud issues on behalf of Norfolk Southern. Well, didn't it turn out that they were arguing common law fraud? In Appellant's reply brief, they did pivot and suggest that they were bringing common law fraud claims instead of RLA fraud claims. That is both impossible and not permitted. It is impossible because when you look at their complaint, paragraph nine of their complaint establishes the subject matter jurisdiction for the district court. And it states that they are bringing their RLA claims, their fraud claims, pursuant to and under the RLA. There are a number of other paragraphs in their complaint that also indicate... Aren't there some that just generically talk about fraud, bad faith, collusion? Are those... Is there a bar, you say, from addressing those as common law claims? There is a bar, and I want to specify. So, when they do talk about the fraud and collusion, it's within this umbrella of the RLA. Paragraph 19 of their complaint, for instance, states, in accordance with the RLA and the CBA, both in SRC and the union, fraudulently and in collusion, agreed upon Defendant David N. Wright. So, they are stating that in accordance with the RLA and the CBA, that is the basis for their fraud allegations. Now, in their reply... I think you've answered the question. I think part of the concern of everyone is that these are 20-year employees, and they put in the time when they left, and it's one minute off for one and two minutes off for the other. And there's some evidence in the record that this was perhaps not a dismissal case. What is the position... What is the company's position about the appropriateness or the viability of this being a dismissal claim? With respect to whether it's an appropriate dismissal claim, I think that's for my co-counsel, Mr. Devine, on the FRSA allegations. But with respect to the fraud claim, because they are pursuing under the RLA, under this court's jurisprudence and every court in America, that review is subject to the narrowest review known to law, in the interest of promoting peace and agreement between management and employees in the railroad. So, if they want to bring an RLA fraud claim based on what happened below, they can do so, but they have to go through the RLA appeal process, which includes an appeal for fraud or corruption. But it must be the extrinsic type of fraud. It cannot be the type of fraud that they are alleging here, which is bias or prejudice on the part of the neutral arbitrator. Which is the separate remedy, right? It's the separate remedying provision to have that arbitration. And you say that that's not any part of the RLA claim allowable? That is correct. What they have to point to, if they want to have a fraud claim as part of the RLA appeal process, they have to do more than just allege upon information and belief some type of fraud. What they are relying on here is simply Mr. Ray's previous affiliation with Norfolk Southern. It has to be more than that. There has to be some sort of specific allegation of bribing the arbitrator or something like that. That is not here. And they can't do an end around the RLA by then trying to say, well, this is a common law fraud claim. That is not permitted under the RLA when they are attacking the RLA process itself. That's what they use as their jurisdictional argument. They fit their case within the RLA. It has to come within the RLA. Hawaiian Airlines does not allow them to get around that. You know what just strikes me as strange here? I don't see anything in the record that explains to me. I mean, it seems odd to let these 20-year-old employees go over just a two-minute fuss. I mean, is that the real reason for their discharge or was that pretext? But that's not raised by the plaintiff, so why is that? Is that a separate arbitration proceeding or something? Judge Gilman, I share your confusion. And this is the reason that in order to review these arbitral award decisions, you have to follow the RLA process. What they did here was file a collateral attack on the process, so we don't have that record material in this case because the RLA appeal process wasn't filed. I don't know the answer to your question because I'm sure it came up in the board hearing, but that's not part of the record here. They're basing their whole case on the alleged fraud or collusion and getting this Wray the neutral arbitrator. That's correct, but they don't satisfy the extrinsic fraud requirements. The particularity of Rule 9. Not only Rule 9, but the heightened fraud requirements under the RLA. That's correct. Thank you. Thank you, Your Honors. My name is James Petroff. I'm here from the law firm Wentz McInerney Pfeiffer. Petroff representing the Brotherhood of Locomotive Engineer and Trainmen. We're general counsel to them in the United States. And I'm going to speak in particular with respect to the duty of fair representation claims against the unions. And my colleague, Joe Mando, that represents the GCA, is going to talk about the motions to dismiss and sanctions and whatever other questions you have. We do agree with the company that the fraud claims are preempted under Hawaiian Airlines v. Norse when you're talking about the CBA, when you're talking about this. And we have specific fraud claims within the statute of how you're going to overturn an award when you're attacking it. You can't come up with amorphous fraud ideas. But I'm going to talk about the duty of fair representation. And in this case, I look at the reply brief. This case has been briefed well. I want to talk about two things, really. Number one, the selection of arbitrate array. And I can't speak about whether the 20-year employees, whether there's any FERSA. It followed the process. The union selected arbitrate array, not just for these people to throw the case, but for all these other people. And in the reply brief, Mr. Leisherman, opposing counsel, says, well, I'm not just complaining because he was a former management official at Norfolk Southern. I'm really saying that he had a financial interest in the pension. And so that's why the union should never. Except what he says over and over again is, presumably, presumably, over on information and belief, and presumably. And under Iqbal and Twombly standards, you don't get to say presumably. The plaintiffs have to go out. If they want to find out whether arbitrate array had any pension or anything, then go search and find a former employee and find out what the situation is. He cites in his brief the SEC filings on the pension plan. But how do you know whether arbitrate array has any sort of pension with that company? We don't. So, you know, this is what he uses to say that, you know, I don't have evidence of a conspiracy. But please, because that evidence could be out there with the defendant, let me get over Iqbal and Twombly. And that's just not the law. He doesn't have it. It was a three-member arbitration panel. Yes. Public. Yeah, public law board. Right, a neutral arbitrator. And then the rest of the two arbitrators are one from the company and one from the union. And as we said, with respect to his second part of his claim that he raises for the first time in his reply brief, and I think that's improper, that, you know, this was a neutral, the union arbitrator is a neutral arbitrator. He doesn't have to rule under the duty of fair representation for the plaintiff. And as the plaintiff says and admits, under Alpo versus O'Neill, the standard is for selection of the arbitrator, was there a rational basis for that decision by the union? And this arbitrator, as you see from his statistical arguments, rules in favor of the company over 40% of the time on reinstatement, which costs the company millions of dollars. It's millions of dollars for the employee over the course of time to save that person's job. And all he focuses on is that the arbitrator has a tendency to split. Right? He splits the baby. Right? He doesn't give back pay a lot. But there's no comparison to any other arbitrator. There's no multivariate regression analysis. As Mark Twain once said, there's lies, damn lies, in statistics. And that's what his complaint is built on. And so we would submit that it should be affirmed. Thank you, your honors. May it please the court. My name is Joseph Mando. I'm an attorney with Faulkner, Hoffman & Phillips. I'm here today to argue on behalf of the Brotherhood of Locomotive Engineers and Trainmen, Norfolk Southern Lines, CF&E, General Committee of Adjustment. I'm going to be addressing the motion to dismiss the appeal that was filed on behalf of the General Committee of Adjustment, as opposed to saying that whole long thing, as well as the National Division of the BLET. What we're here about and why we filed our motion to dismiss the appeal, it's relatively simple. On May 18, 2021, there was a status conference on the underlying district court case. Mr. Legionman was there on behalf of plaintiffs. All of the folks that you see here on the appellee side were there as well. And we were before Judge Carr. And what happened here, we had an initial complaint that was filed by the plaintiffs. The defendants at that time filed motions to dismiss and motions for judgment on the pleadings. The motion to dismiss Norfolk Southern was granted. And then Judge Carr granted a dismissal with prejudice with respect to certain claims and then dismissal without prejudice on two other claims. So we wanted to get clarification on what was happening. Mr. Legionman then attempted to file an amended complaint. When our office reviewed it on behalf of our client, we noticed there's no claims or no allegations whatsoever made against the General Committee of Adjustment. What's going on here? So during the status conference, we raised this to the judge. And during the status conference, you'll see it. It was filed by Mr. Legionman at pages, I think, 794, 795, 796, and 797 of this court record as well as page 809. And what you'll see is there's a back and forth between the various then defendants and Mr. Legionman and the judge. And we asked point blank, what are you doing here? You have no claims against our client. Why are we still named in your amended complaint? After some back and forth, what happened was Judge Carr took note of that and he said, out is out. He said, why are we still here? Why are the General Committee and the union still there? Initially, Mr. Legionman wanted to voluntarily dismiss the General Committee without prejudice. After some prodding by Judge Carr, he agreed, yes, I'll voluntarily dismiss them with prejudice. So when we got the notice of appeal, there was a minute entry that followed the May 18th, 2021 status conference. And it flatly says, upon the agreement of the parties, the union defendants are dismissed with prejudice. So imagine our surprise when we saw the appeal that we're now here talking about today. Our position is, as argued in our briefs for the motion to dismiss and the motion for sanctions, is that if you voluntarily dismiss your claims with prejudice against parties, you can't then appeal and reassert those claims through the appeal. So that's why we're here. If you don't have a basis for the appeal, the motion for sanctions rationally followed because it's futile to file your appeal. I notice my time is up. Unless there are any questions, I will step down. Thank you. Thank you. Initially, I want to make something very, very clear. If this circuit and the Supreme Court has made it clear in a whistleblower case under the Federal Railway Safety Act, refusal is not required. They claim it is. The case law is absolutely against them. Well, what about this last argument, May? If it was dismissed with prejudice, what right do you have to appeal that? Well, let me say this. It was dismissed on a minute order without any explanation and opportunity for us to clarify it. We wanted to dismiss certain counts, not the party, and the record will show that. I thought you told the judge at the status conference that it was an error that you made to include, for example, the GCA in the title of your pleading because you did not intend to bring claims against them. I think that's correct, Your Honor. So that resolves the GCA issue, doesn't it? I think so. We've not made any real allegations against them. You may have accidentally named them, but there's no briefing against them. They talked about that this accurate reporting of time has nothing to do with safety. It has to do with the collective bargaining. That's not so. The limit is 12 hours, exactly 12 hours. And if they go a minute over 12 hours, there's serious consequences from the Federal Railroad Administration. They suggest one or two minutes is de minimis. You're only fussing about six hours, not 12. In this instance, that is the reason this two-minute setback is there. It was never intended for these people. As illegal as it was, it was never intended for these guys. They insisted on accurate reporting, and they did accurately report it. They do not have to refuse. But were they instructed? I thought they were not instructed to up their time. Like you're saying, I refuse to alter my time, but do you even allege that they were told to alter their time? No. That's what I meant by refusal. They internally refused to do it, but they didn't refuse the company, and they're not required to. If this is what they're asked to do, they have a choice. Do it or in subordination. They did it. In order to do it accurately, they would have had to falsely claim they worked two minutes later, and they did not work two minutes later. At the end of the 12-hour shift, there is required reporting to check out for locomotive engineers and conductors. They don't want to have to account for that minute or two to check out because it's really close sometimes, and they institute this. But let me speak to the fraud. It should be clear that this mediation was not done through the auspices of the National Mediation Board. The National Mediation Board has a code of ethics just like the bar does. You may not have a conflict of interest or a bias. They know that they would not permit him to. He's on their roster. What they did is take this arbitration out privately. The union agreed to it. The railroad agreed to it. I thought the rules to be an arbitrator required that the individuals who sit have ten years of work experience in this very industry, right? So wouldn't everybody who sat on the arbitration board have either worked with the union or with some company at some time? No. They can work for any company, any railroad, not this railroad. This Mr. Ray was an assistant vice president of labor relations of this railroad, of the Norfolk. He also worked for a union in his career, correct? A long time ago, yes. For I think one or two years. So he qualified to meet the rules. He had experience with both sides of the equation, both the company and the union. And that was one of the qualifying factors to be an arbitrator on which he sat on a panel with two others. Then the question that is glaring is why did they take it away from the National Mediation Board? And why did they fail to alert these two people that they had a right to refuse Mr. Ray and go back to the National Mediation Board? They concealed that from them. They concealed from them 81, essentially 81 consecutive losses of back pay. And to be clear, the lethal part of the order is not whether you get back to work. The lethal part is no back pay because they use it as a billy club on the site. You want to report too many violations to the Federal Railroad Administration, we'll find an excuse. It won't happen now, but you're going to be out of work a year to a year and a half and you're not going to get any back pay. This case took a year and a half. Nobody got back pay. That's the real issue here, not whether they put them back to work. No one got back pay. And they use that as a club against these people lest they dare report violations. Consuls talked about the amended complaint. They argued not to admit the amended complaint, and they didn't. It's not admitted, but yet now, after arguing to keep it out, they're relying upon it. If we'd had a modicum of discovery and we asked for it, very simple, I'd like to see Mr. Gibson's tax return. Mr. Gibson is the vice president, international vice president, of the Locomotive Engineers Union. He signed on all 81 of these, making all 81 unanimous. Where is their representation? They're supposed to be on his side. Everyone, you would think. I think your red light is on. I think your red light is on, so that concludes rebuttal. We thank you all for your arguments and for dividing them in a way that would function. The case will be taken under advisement and an opinion will be issued in due course.